**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martinez**

Civil Action No. 25-cv-0679-WJM
(Criminal Case No. 22-cr-187-WJM-1)

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.

SHAMBRICA WASHINGTON,

      Defendant/Movant.

---

**ORDER DENYING MOTION TO VACATE, SET ASIDE,**
**OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

---

This matter is before the Court on Shambrica Washington's "Motion Under 28 U.S.C. 2255 to Vacate Set Aside or Correct a Sentence" ("Motion").  (ECF No. 265.)  The Government filed a response (ECF No. 271), to which Washington filed a reply (ECF No. 273).  For the reasons set forth below, the Motion is denied.

## I.    BACKGROUND

In the underlying criminal proceedings, Washington stood accused of submitting sixty fraudulent applications to Government programs created to provide financial assistance to small businesses during the COVID-19 pandemic, like the Paycheck Protection Program ("PPP") administered by the Small Business Administration ("SBA").  (ECF No. 218 at 4–10.)  Between March 2020 and October 2021, Washington applied for approximately $16 million on behalf of two businesses.  (*Id.*)  While many of the

applications were denied, she ultimately obtained $500,000 in COVID-19 financial assistance.  (*Id.* at 9.)

Washington was charged with 31 counts of wire fraud, bank fraud, money laundering, and false claims.  (ECF Nos. 1, 155.)  A grand jury also indicted her (now ex-) husband, Jean Damus, on two counts of wire fraud for his lesser role in the scheme.  (ECF No. 1.)  He later pled guilty to one count of false claims and was sentenced to three years of probation.  (ECF No. 84, 86–88, 143.)  Washington, on the other hand, proceeded to trial and was convicted by a jury on all 31 counts.  (ECF No. 226.)  The Court sentenced her to 90 months of imprisonment—a downward variance from the applicable Sentencing Guidelines range of 108 to 135 months' imprisonment. (ECF No. 226, 227.)

Washington appealed her conviction and sentence soon after the Court entered judgment.  (ECF Nos. 229, 230.)  While her direct appeal was pending, she also filed a § 2255 motion, which the Court denied without prejudice as premature.  (ECF Nos. 260, 261.)  Washington then voluntarily dismissed her direct appeal and re-filed the present Motion.  (ECF Nos. 263, 265.)  She now "asks that the judgement be vacated and set aside with prejudice on all 31 counts in the indictment" and, if her Motion is granted, for "immediate release from federal custody."  (ECF No. 265 at 15–16.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255,

> [a] prisoner in custody under sentence of a court established
> by Act of Congress claiming the right to be released upon
> the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court
> was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law,

> or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); *see also Brown v. United States,* 34 F.3d 990, 990 (10th Cir. 1994) ("Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice.").

The Court must liberally construe Washington's *pro se* Motion, but it is "not required to fashion [Washington's] arguments for [her] where [her] allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)).

### III.    ANALYSIS

### A.    Procedural Default

Washington brings numerous claims and sub-claims challenging her conviction and sentence, including but not limited to allegations of prosecutorial misconduct, ineffective assistance of counsel ("IAC"), sentencing errors, and violations of Double Jeopardy and the Fourth Amendment. (*See generally* ECF No. 265.) The Government contends that all but Washington's IAC claims are procedurally barred because she failed to raise them on direct appeal. (ECF No. 271 at 4–5.) The Court agrees.

"A § 2255 motion is not intended as a substitute for an appeal." *United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004). Thus, excepting IAC claims, "failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *United States v. Barajas-Diaz,* 313 F.3d 1242, 1245 (10th Cir. 2002); *see also United States v. Galloway,* 56 F.3d 1239, 1242 (10th Cir. 1995) ("claims of

constitutionally ineffective should be brought on collateral review, in the first petition filed under 28 U.S.C. § 2255").

Washington expressly acknowledges that "[t]he issues being raised in this motion ha[ve] not . . . been raised on appeal," and that "the appeal in this case has be[en] closed due to a voluntary dismissal." (ECF No. 265 at 14–15; *see also* ECF Nos. 263, 264.) Claims that could have been raised on direct appeal are procedurally barred even in the case of a voluntary dismissal. *See United States v. Lopez,* 499 F. App'x 824, 826–27 (10th Cir. 2012) (affirming district court's finding that *Giglio* claim was procedurally barred where defendant voluntarily dismissed his direct appeal); *United States v. Hutchinson,* 1993 WL 128880, at *2 (10th Cir. Apr. 21, 1993) (affirming district court's finding that all but defendant's IAC claims were procedurally barred after he voluntarily dismissed his direct appeal).

Still, there are "two well recognized exceptions under which a defendant may escape application of the procedural bar against consideration of defaulted claims." *Cervini,* 379 F.3d at 990. The Court considers whether either exception excuses Washington's procedural default below.

### 1.    Cause and Prejudice

Under the first exception, "if defendant can show both good cause for failing to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to his defense, the procedural bar will not be applied." *Id.* "To establish 'cause' requires a defendant to show some external objective factor—such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel—prevented from raising the issue on direct appeal."

*United States v. Torres-Laranega,* 473 F. App'x 839, 842 (10th Cir. 2012) (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).  Prejudice denotes "error of constitutional dimensions that worked to [the movant's] actual and substantial disadvantage."  *United States v. Snyder,* 871 F.3d 1122, 1128 (10th Cir. 2017) (internal quotation marks omitted).

Washington asserts—albeit in conclusory fashion—that the issues in the Motion were not raised on appeal "because the Appeal Attorney said they could not be raised on a direct appeal."  (ECF No. 265 at 14.)  In her reply brief, she expounds that her appellate counsel informed her "that she did not 'see any good issues to raise eon [*sic*] on appeal.'"  (ECF No. 273 at 2.)  Thus, liberally construing Washington's briefing, the Court understands her to allege that her appellate counsel was ineffective for failing to identify the issues raised in the Motion as grounds for an appeal.

Like when ineffective assistance of appellate counsel is asserted as an independent claim, *Strickland v. Washington,* 466 U.S. 668 (1984), governs the Court's analysis of whether ineffective assistance of appellate counsel constitutes cause and prejudice excusing Washington's procedural default.  *Neill v. Gibson,* 278 F.3d 1044, 1057 (10th Cir. 2001).  Thus, Washington "must show both (1) constitutionally deficient performance, by demonstrating that [her] appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding—in this case the appeal—would have been different."  *Cargle v. Mullin,* 317 F.3d 1196, 1202 (10th Cir. 2003).

5

While "[a] claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, . . . it is difficult to show deficient performance under those circumstances because counsel 'need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Cargle,* 317 F.3d at 1202 (quoting *Smith v. Robbins,* 528 U.S. 259, 285 (2000)). "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, [the Tenth Circuit] look[s] to the merits of the omitted issue." *Hooks v. Ward,* 184 F.3d 1206, 1221 (10th Cir. 1999).[1] "[I]f the issue is meritless, its omission [on appeal] will not constitute deficient performance." *Cargle,* 317 F.3d at 1202.

Thus, the Court must consider the merits of Washington's claims subject to a procedural bar to determine whether her appellate counsel rendered ineffective assistance in failing to identify them as grounds for a direct appeal. For the reasons set forth below, the Court finds that all are meritless.

   a.  *Prosecutorial Misconduct*

"Ground One" of the Motion, including subparts (A)–(E), pertains to alleged "Misconduct by the Government." (ECF No. 265 at 2–3.) The Court construes Washington's allegations to assert various due process violations under *Napue v.*

---

[1] Washington appended correspondence with her appellate counsel to her reply brief that evidences her appellate counsel ultimately did not believe there were *any* meritorious issues to raise on direct appeal. (ECF No. 273 at 17–21.) While applicable caselaw instructs that the merits of an issue "generally" are considered "in relation to the other arguments counsel did pursue," *Cargle,* 317 F.3d at 1202, the Court is unaware of—and the parties do not cite—any authority suggesting that appellate counsel must raise *some* issue on appeal, regardless of its merits, to render effective assistance.

*Illinois,* 360 U.S. 264 (1959), *Brady v. Maryland,* 373 U.S. 83 (1963), and/or *Giglio v. United States,* 405 U.S. 150 (1972).

In Grounds 1(A)–1(C), Washington alleges that the Government failed to disclose certain "material" and "exculpatory" evidence. (ECF No. 265 at 2–4.) Specifically, she contends that the Government failed to disclose that Damus pled guilty "with the understanding that no harm would be brought to his ex-wife or children if he cooperated with the prosecution," and—somewhat contradictorily—that the Government agreed "to dismiss charges against Jean Damus if he cooperated and testified or made statements against the movant." (*Id.*) Similarly, in Ground 1(B), Washington alleges that the Government failed to disclose to the jury that she and Damus were "going through a bitter divorce which posed a conflict of interest or motive for Mr. Damus to provide false statements to investigators and prosecutors." (*Id.* at 3.)

It is well-established that "[i]mpeachment, as well as exculpatory evidence[,] falls within the rule[] articulated in *Brady* . . . that suppression of material information favorable to the accused violates due process." *United States v. Gonzalez-Montoya,* 161 F.3d 643, 649 (10th Cir. 1998). To establish a *Brady* violation, "the defendant bears the burden of establishing (1) that the prosecution suppressed evidence, (2) that the evidence was favorable to the accused, and (3) that the evidence was material." *Smith v. Secretary of New Mexico Dept. of Corrections,* 50 F.3d 801, 824 (10th Cir. 1995).

As a threshold matter, the Court notes that Damus was not a Government witness at trial. (ECF No. 196.) Thus, it is not readily apparent to the Court how his

7

credibility was at issue at trial, and in turn how his plea deal or the pending divorce proceedings would have had a material impact on the outcome of the case.

In any case, Washington cannot show that the Government suppressed evidence.  Damus's plea agreement with the Government was fully disclosed on the record a year prior to Washington's trial.  (ECF No. 86–88.)  And its terms do not support Washington's speculative assertion that his guilty plea was conditioned on a separate understanding or agreement that "no harm would be brought" to Washington, or that the Government would dismiss charges against him in exchange for his cooperation with the prosecution's case against her.  (*See* ECF No. 87 at 9.)  Naturally, Washington's own "bitter divorce" with Damus was also known to her.  (ECF No. 273 at 4 ("Yes, Shambrica knew . . . .").)

Moreover, to the extent Washington asserts that the Government was required to present information regarding Damus's plea deal and her divorce *to the jury*, her argument is without legal support.  *Washington* was free to present such information to the jury if relevant to her defense (and otherwise admissible), but the Court is unaware of any authority supporting the notion that *Brady* or its progeny obligated the prosecution to do so.  *See Case v. Hatch,* 731 F.3d 1015, 1043 n.14 (10th Cir. 2013) ("*Brady* requires a prosecutor to disclose material exculpatory evidence *to the defendant* before trial.") (internal citation omitted) (emphasis added).

Next, in Grounds 1(D)–(E), Washington alleges that the Government committed "intrinsic fraud" by "intentionally present[ing] falsified evidence to the jury," including "false or forged documents" and "perjured testimony."  (ECF No. 265 at 4.)  "To establish a *Napue* violation, a defendant must show that the prosecution knowingly

solicited false testimony or knowingly allowed it 'to go uncorrected when it appear[ed].'" *Glossip v. Oklahoma,* 604 U.S. 226, 246 (2025) (quoting *Napue,* 360 U.S. at 269). "If the defendant makes that showing, a new trial is warranted so long as the false testimony may have had an effect on the outcome of the trial—that is, if it in any reasonable likelihood [could] have affected the judgment of the jury." *Glossip,* 604 U.S. at 246 (internal citations and quotation marks omitted) (cleaned up).

As to the allegedly falsified documents, Washington explains that she "recognized" at trial "that one of the form's from the SBA had falsified information on it and was inauthentic," and "that specific document" was subsequently "pulled from evidence by the Government for its inauthenticity." (ECF No. 265 at 4.) She argues that "had that information been presented or known to the jury it *could* have affected the outcome of the trial." (*Id.* (emphasis added).) Notably, Washington does not specify the trial exhibit to which she is referring. But it is ultimately of no moment, because she cannot demonstrate that information that was never presented to the jury had a material effect on the jury's verdict.

Washington's allegation of "perjured testimony" fares no better. In the Motion, Washington did not even identify which trial witness (or witnesses) she believed testified falsely, much less the content of their allegedly falsified testimony. In her reply, she expounds that "[a]ll of the testimony given by the government employees under the instruction and direction of Brendan Murt and his terrorist group was perjured." (ECF No. 273 at 5.) This conclusory—and fantastical—allegation is insufficient to persuade the Court that she has a colorable claim that a *Napue* violation has taken place.

b.    *Sixth Amendment Violation*

In Ground 2(C), Washington alleges that "the district court failed to inquire into movants dissatisfaction with her attorney," which in turn violated her "Sixth Amendment right to counsel." (ECF No. 265 at 5.)[2]  The Motion does not specify when she believes the Court should have made such an inquiry, but she expounds in her reply that she "stated at trial that she wants to move for another attorney or possibly represent herself" and "was met with resistance by the judge"—namely, in the form of "threats about how Washington would not have access to the law library and other things." (ECF No. 273 at 6.)  Faced with such "resistance," Washington submits she "proceeded to trial although knowing she was otherwise walking into a burning building" and, as a result, "her constitutional rights were violated." (*Id.*)

To the extent Washington's claim is that the Court violated her right to self-representation, she had to satisfy four requirements before it could permit her to proceed pro se at trial.

> First, the defendant must "clearly and unequivocally" inform the district court of his intention to represent himself. Second, the request must be timely and not for the purpose of delay.  Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is "knowingly and intelligently" made. Finally, the defendant "must be 'able and willing to abide by rules of procedure and courtroom protocol.'"

*United States v. Tucker,* 451 F.3d 1176, 1180 (10th Cir. 2006) (citations omitted).  In this case, Washington informed the Court that she wanted to represent herself on the first day of trial, in the middle of voir dire. (*See* ECF No. 245 at 173.)  The Court instructed her that it would not grant a continuance if she decided to proceed *pro se*

---

[2] Washington lumps this allegation together with her IAC claims, but it is distinct.

10

and, after conducting a "thorough and comprehensive formal inquiry" on the record to ensure that Washington was "aware of the nature of the charges, the range of the allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se," *United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir. 1991), provided her with a brief recess to consider her final decision. (ECF No. 245 at 173–188.) Ultimately, Washington informed the Court she would "move forward with [her trial counsel] for now." (*Id.* at 189.) Thus, she made no "clear, unequivocal request" to proceed pro se. *United States v. Simpson,* 845 F.3d 1039, 1047 (10th Cir. 2017).

To the extent Washington's claim is that the Court improperly denied her substitute counsel at trial or otherwise failed to conduct a proper inquiry into her request for substitute counsel, her claim fails for similar reasons. The law instructs that "the district court should make formal inquiry into the defendant's reasons for dissatisfaction with present counsel *when substitution of counsel is requested*." *United States v. Padilla,* 819 F.2d 952, 956 n.1 (10th Cir. 1987) (emphasis added). Before ultimately deciding to proceed with her appointed trial counsel, as summarized above, Washington repeatedly asserted she wanted to represent herself, but she never requested at trial that the Court appoint her substitute counsel. (*See generally* ECF No. 245 at 173–188.)[3] At most, Washington suggested she may try "to obtain [her] own attorney," to which the Court responded she could "have anyone you want represent you" but no further continuances would be granted. (*Id.* at 189.)

---

[3] It bears mentioning that, while Washington made no request for substitute counsel at trial, she was appointed three different attorneys during the pendency of her criminal case. (ECF Nos. 41, 149.)

c.     *Unlawful Sentence*

In "Ground Three," Washington asserts that her "sentence was imposed in violation of federal law."  (ECF No. 265 at 9.)[4]  In support, she states that "the district court entered a judgement that imposed a greater penalty than previously announced," and that "throughout the duration of the entire case and even after conviction the government stated that they were not seeking any detention in this case."  (*Id.* at 9–10.)

The Court fails to see how either explanation leads to the conclusion that her sentence violates federal law.  In any event, while the Government did not seek *pretrial* detention, (ECF No. 6 at 56), the record supports that Washington knew in advance of trial that she was facing a prison sentence if convicted, (ECF No. 113 at 8; *see also* ECF No. 245 at 178.)  And ultimately, the Court imposed a sentence *below* the applicable Guidelines range.  (ECF No. 227 at 3.)

d.     *Prior Conviction Invalid*

In "Ground Four," Washington challenges the constitutional validity of her "prior conviction in state court in El Paso County Colorado" following a guilty plea.  (ECF No. 265 at 10.)  "[A] defendant convicted in state court . . . may raise constitutional claims on direct appeal, in postconviction proceedings available under state law, and in a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254."  *Daniels v. United States,* 532 U.S. 374, 381 (2001).  But "[t]hese vehicles for review . . . are not

---

[4] The Government contends that cause and prejudice would not excuse Washington's procedural default as to Ground 3.  (ECF No. 271 at 6.)  It is true that, "given the more limited scope of § 2255, the cause and prejudice test does not apply to nonconstitutional or nonjurisdictional error which could have been raised on direct appeal."  *Brown v. United States,* 25 F.3d 990, 991 (10th Cir. 1994).  However, the Court need not decide whether cause and prejudice would be sufficient to evade a procedural bar as to Washington's claim of an unlawful sentence because she has not shown cause and prejudice in any case.

12

available indefinitely and without limitation." *Id.*  Thus, if by the time of sentencing "a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence." *Id.* at 382. "This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings." *Id.*  "No other constitutional challenge to a prior conviction may be raised in the sentencing forum." *Id.*

Washington was assessed one criminal history point for her prior conviction in El Paso County.  (ECF No. 218 at 15.)  She contends this prior conviction was "constitutionally invalid" for various reasons, including because it "was initiated using intrinsic fraud and falsified statements made by a police officer," the "plea deal [w]as a result of attorney and prosecution misconduct," and "she was not represented by counsel."  (ECF No. 265 at 9–10.)  But, to the Court's knowledge, Washington never challenged her prior conviction on direct or collateral review.  And she did not raise any argument that the conviction was obtained in violation of her right to counsel at sentencing.[5]  Thus, her conviction was presumptively valid at the time of sentencing and could form the basis for a sentence enhancement.[6]

---

[5] Notably, the Presentence Report ("PSR") states that Washington "was represented by counsel" in connection with her prior conviction.  (ECF No. 218 at 15; *see also* ECF No. 113 at 6.)

[6] The Court further notes that, at the time of sentencing, Washington's single criminal history point had no effect on her Criminal History Category, and thus no effect on the applicable Guidelines range.  U.S.S.G. Ch. 5, Pt. A (Nov. 1, 2021).  Absent her prior conviction, Washington may have also had a meritorious argument she qualified for a two-offense level reduction as a "zero-point offender" under Amendment 821.  U.S.S.G. § 4C1.1(a).  But the downward variance the Court ultimately imposed placed her sentence within the Guidelines range for a reduced offense level of 29 anyway (87 to 108 months).  U.S.S.G. Ch. 5, Pt. A (Nov.

e.      *"Miscarriage of Justice"*

In "Ground Five," Washington asserts a "miscarriage of justice" occurred because "the Government shifted the nature of their case constantly."  (ECF No. 265 at 11.)  Specifically, she alleges that the Government "chang[ed] the entire witness list after it was made known to the Court that" all of the Government's witnesses "had prior affiliation[s]" with the jurisdiction of her prior conviction thus, according to Washington, presenting a "conflict of interest."  (*Id.*)  She further adds that the Government shifted its theory of guilt at trial thereby "mislead[ing] the defense counsel."  (*Id.* at 12.)

Washington's averments are belied by the record.  In advance of trial, the Government disclosed its theory of the case (via a *Stipulated* Statement of the Case), the documentary evidence it intended to present, and the witnesses it intended to call. (*See* ECF Nos. 165, 167, 186, 196.)  Its theory of Washington's guilt remained consistent throughout trial.  (*Compare* ECF No. 246 at 2–9 (opening) *with* ECF No. 250 at 803–24, 841–47 (closing).)  And it is clear from the trial record that none of the witnesses who ultimately testified had any affiliation with the jurisdiction, El Paso County, or police department, Fountain Police Department, associated with Washington's prior conviction.[7]

f.      *Double Jeopardy*

In "Ground Six," Washington claims a Double Jeopardy-violation because her

---

1, 2021).

[7] (*See* ECF No. 247 at 2 (SBA attorney); *id.* at 54 (national SBA underwriting manager): *id.* at 127, 190 (IRS employee, agent); ECF No. 248 at 30 (SBA attorney); *id.* at 102 (Colorado Department of Labor and Employment employee); *Id.* at 133 (IRS agent); *id.* at 184 (SBA employee); *id.* at 249 (CPA); *id.* at 265 (Pikes Peak Center employee); ECF No. 249 at 2 (in-house counsel at Grand Homes Homebuilder); *id.* at 31 (IRS agent); *id.* at 124 (FBA forensic accountant).)

"separate convictions for the same transactions on diff[e]rent dates" constituted a "single criminal episode" and thus should have been merged.  (ECF No. 265 at 12.) The Supreme Court has "emphatically refused to import into criminal double jeopardy law the civil law's more generous 'same transaction' or same criminal 'episode' test." *Currier v. Virginia,* 585 U.S. 493, 507 (2018).  Moreover, "[m]ultiplicity refers to multiple counts of an indictment which cover the same criminal behavior."  *United States v. Morehead,* 959 F.2d 1489, 1505 (10th Cir. 1992) (quotation omitted).  "The doctrine has no application in cases in which two counts are based on 'two distinct sets of conduct." *United States v. Benoit,* 713 F.3d 1, 16 (10th Cir. 2013) (quoting *United States v. Sturm,* 673 F.3d 1274, 1288 (10th Cir. 2012)).

Here, Washington acknowledges her convictions arise out of transactions taking place on different dates.  This is enough to render each transaction a "distinct[] set of conduct."  *Benoit,* 713 F.3d at 16; *see also, e.g., United States v. Williams,* 527 F.3d 1235, 1241 (11th Cir. 2008) ("Where one scheme or artifice to defraud involves multiple wire transmissions, each wire transmission may form the basis for a separate count.").

g.      *Fourth Amendment / Wire Fraud Act Violation*

In "Ground Seven," Washington contends the Government obtained her IP address through "trickery, cohersion [*sic*], and deception" of Damus in violation of the Wire Fraud Act and her Fourth Amendment rights.  (ECF No. 265 at 12–13.)  The Government submits that "[t]he record shows nothing of the sort," and specifically notes there is no indication of "coercion or deception and no mention of Washington's IP address" in the record of law enforcement's interview with Damus.  (*See generally* ECF No. 201-4.)  Apart from her own rank speculation, Washington has not alleged any

15

particular facts that suggest otherwise.

> h.     *Changes in Substantive Law*

Lastly, in "Ground Eight," Washington asserts that an intervening decision of the Supreme Court, *Kousisis v. United States,* 605 U.S. 114 (2025), renders the wire fraud, money laundering, and false claims charges against her "moot."  (ECF No. 265 at 13–14.)  According to Washington, *Kousisis* stands for the proposition "that an individual who has no legal interest in the government can not defraud the government."  (ECF No. 265 at 14.)  As best the Court can gather, Washington is asserting she has no legal interest in the Government because she obtained the loans from certain private financial institutions, but "the bank did not bring charges against" her.  (*Id.*)

To the extent Washington is arguing she has no legal interest in the Government because the Government has no legal interest in the loans she fraudulently obtained, her argument is wrong.  Though issued by a private lender, the loans were guaranteed by the federal government.[8]  And even if that were not the case, the Government—not private banks—prosecutes federal crimes.  *See Enriquez v. United States,* 818 F. Supp. 280, 283 (E.D. Mo. 1993) ("If a person commits a burglary against a business, the business does not prosecute the crime . . . . Likewise, when a crime is committed in violation of a federal statute, the federal government prosecutes it.").

In any event, *Kousisis*—which was not actually decided until after the briefing on the Motion became ripe—lends no legal support for Washington's argument.  (*See* ECF No. 274.)  Ultimately, the Supreme Court held that a defendant can be held criminally

---

[8] *See* U.S. Dep't of the Treasury, *Paycheck Protection Program (PPP) Information Sheet Lenders* (Mar. 31, 2020), available at: https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

16

liable for federal mail and wire fraud even for schemes that are not intended to and do not cause economic loss—in other words, under a fraudulent inducement theory.  605 U.S. at 118.  This holding affords no relief to Washington.

********

In sum, the Court concludes that each of Washington's non-IAC claims lack merit.  As a result, her appellate counsel could not have rendered ineffective assistance for failing to raise them on direct appeal, and neither can Washington establish cause and prejudice excusing her procedural default on that basis.

2.    Actual Innocence

Under the second exception to procedural default, "if defendant can demonstrate that 'failure to consider the federal claims will result in a fundamental miscarriage of justice,' the court may reach the merits of the claimed constitutional deficiencies despite the procedural bar."  *Cervini,* 379 F.3d at 990–91 (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted in original)).  A movant may establish a fundamental miscarriage of justice with "a credible showing of actual innocence."  *McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013).  Actual innocence "means factual innocence, not mere legal insufficiency."  *Bousley v. United States,* 523 U.S. 614, 623 (1998).  Thus, "[a] prisoner can establish actual innocence in post-conviction proceedings only by bringing forward new exculpatory evidence."  *Warren v. United States,* 707 F. App'x 509, 512 (10th Cir. 2017) (citing *McQuiggin,* 569 U.S. at 392; *Schlup v. Delo,* 513 U.S. 298, 234 (1995) (stating that the defendant must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial")).

17

Here, Washington has not presented any new evidence tending to show she did not commit the fraud, money laundering, and false claims act offenses for which she was convicted at trial. *Cf. Warren,* 707 F. App'x at 512. Thus, the second exception does not excuse her procedural default either.

*****

Having established neither cause and prejudice nor a fundamental miscarriage of justice, the Court finds that Washington is procedurally barred from asserting each of the non-IAC claims considered above.

## B.    Remaining IAC Claims

The Court must next consider Washington's remaining IAC claims, which, as noted, are not subject to a procedural bar.

The Court reiterates that, "[t]o establish an ineffective-assistance-of-counsel claim, one must show both deficient performance and resultant prejudice to the defendant." *United States v. Babcock,* 40 F.4th 1172, 1176 (10th Cir. 2022) (citing *Strickland,* 466 U.S. at 687). Put another way, a defendant asserting ineffective assistance of counsel "must prove both that: (1) his attorney's 'representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Maley,* 1 F.4th 816, 820 (10th Cir. 2021) (quoting *Strickland,* 466 U.S. at 687–88). The Court may address these prongs "in any order, and failure under either is dispositive." *United States v. Barrett,* 797 F.3d 1207, 1214 (10th Cir. 2015) (citation omitted).

18

The Court has endeavored to categorize Washington's myriad IAC claims set forth in Grounds 2(A)–2(O) of the Motion by subject matter in its analysis below.

1.      Ineffective Assistance During Plea Negotiations

Washington asserts several IAC claims which suggest that her counsel rendered ineffective assistance during or regarding plea negotiations.  (ECF No. 265 at 5–6.) Specifically, in Grounds 2(A), 2(E), and 2(F), Washington asserts that

- "[c]ounsel grossly underestimated [her] potential sentencing exposure";[9]

- "counsel failed to advise [her] about her possible exposure and whether [she] relied on that misrepresentation in rejecting the government's plea offer"; and

- counsel "fail[ed] to advise [her] that she could obtain reduction for responsibility simply by pleading guilty."

(*Id.*)

Where a defendant "claims that her attorney was ineffective because he failed to advise her of the possible benefits of pleading guilty," she "must point to particular failings in that advice."  *United States v. Cox,* 782 F. App'x 674, 677 (10th Cir. 2019). Moreover, where the alleged "ineffective advice led not to a[] [plea] offer's acceptance but to its rejection, . . . a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would

---

[9] Washington also alleges in Ground 2(A) that her counsel "failed to move to withdraw [her] plea following the 'grant' of co-Defendants Jean Damus motion to suppress."  (ECF No. 265 at 5.)  But Damus never filed a motion to suppress.

have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper,* 566 U.S. 156, 164 (2012).

Washington failed to allege any facts in the Motion that, taken as true, would allow the Court to draw the conclusion that her attorney incorrectly advised her about the sentence she faced if ultimately convicted at trial, that she would have received a lesser sentence if she had taken the Government's plea offer, or that she would have accepted the Government's plea offer if her counsel had advised her differently.  To the contrary, she frames the pertinent issue as "*whether* [she] relied on [her counsel's] misrepresentation in rejecting the government's plea offer," (ECF No. 265 at 6 (emphasis added)), and averred that "had counsel informed her about possible sentencing exposures she would have *potentially* weighed her options," (ECF No. 273 at 6 (emphasis added)).

For the first time in her reply concerning a *different* IAC claim the Court considers below (Ground 2(D)), Washington alleges her counsel told her "the government was seeking 60 months of detention for her crime and that he could possibly get that lowered if she took a plea deal."  (ECF No. 273 at 7.)  This allegation directly refutes her assertion that her counsel failed to advise her she could receive a lesser sentence if she pled guilty.  And even to the extent it supports her allegation that her attorney "underestimated her sentencing exposure," she *still* does not allege that she would have accepted the Government's plea offer (whatever its terms may have been) had her counsel advised her differently.

20

Her allegations are thus insufficient to show that she is entitled to relief on any claim that her attorney was ineffective in failing to properly advise her regarding her sentencing exposure or the possible benefits of pleading guilty.  *Cf. Cox,* 782 F. App'x at 677 (finding no merit to claim that trial counsel rendered ineffective assistance where the defendant "fail[ed] to allege any specific deficiency in the advice her attorney gave her concerning the benefits of accepting a plea" or "what advice she should have received"); *United States v. Robles,* 546 F. App'x 751 (10th Cir. 2013) (agreeing with the district court that defendant failed to establish a viable IAC claim where he "failed to allege any particular deficiency in counsel's advice" and did "not allege that he would have pled guilty but for counsel's claimed misadvice").

2.    Lack of Communication

In Ground 2(H), Washington alleges her "[c]ounsel's absences during critical stages of the trial resulted in constitutional denial of [her] right to counsel."  (ECF No. 265 at 6.)  In her reply, she specifically states her "[c]ounsel was absent for the entirety of the preparation stages of this trial."  (ECF No. 273 at 7.)  According to Washington, her counsel "spent one day with [her] to discuss the trial" and "[o]ver the course of proceedings in pre-trial and during trial the movant only spoke to counsel twice no more than three times."  (ECF No. 265 at 6–7.)

Washington has not adequately alleged what more her counsel should have done or how she was prejudiced by her counsel not spending more time to prepare with her prior to trial.  Instead, she alleges only that "had counsel been available during critical stages of court proceedings, a better defense could have been built and would have presented a total miscarriage of justice."  (ECF No. 265 at 7.)  Such broad,

21

conclusory allegations will not do.  Absent more, Washington's allegation that her counsel spent "one day" with her to discuss the trial and that she "only spoke to counsel twice no more than three times" does not constitute ineffective assistance.  *Cf., e.g., United States v. Benavidez,* 2006 WL 8444231, at *4 (D.N.M. May 22, 2006) (finding that because counsel and defendant were able to speak a couple of times by telephone, the lack of communication was not so great as to render the representation per se ineffective).

    3.    Failure to Object to "Inadmissible Character Evidence"

In Ground 2(J), Washington contends her trial counsel was ineffective by either failing to "object to the prosecutions introduction of . . . inadmissible character evidence" or "open[ing] the door to the prosecution's introduction of otherwise inadmissible and damaging character evidence."  (ECF No. 265 at 7; ECF No. 273 at 8.)  She elaborates that her "counsel . . . made illogical and incomprehensible comments on the record about [her] views about the government" that "were not only not true, but grossly negligent and harmful to [her] character, which affected how [she] was viewed at sentencing."  (ECF No. 265 at 7–8.)  In her reply, Washington goes so far as to accuse her trial counsel of "committing perjury" by "twisting his clients view on the government that was detrimental to this clients character and case."  (ECF No. 273 at 8.)

The Court presumes that Washington is referring to her counsel's reference to her "extreme distrust of the government institutions" as a factor supporting a downward departure from the Sentencing Guidelines range.  (ECF No. 215 at 8.)  This claim fails for two reasons.

22

First, the record refutes Washington's allegation that her counsel's comments about her views on the government were untruthful or perjured.  The observation that Washington harbored an extreme district of government institutions was derived from the competency evaluation performed by an independent medical professional prior to trial.  (ECF No. 113.)  And indeed, the record—including Washington's briefing on the Motion—is replete with examples of that "extreme distrust."  (*See, e.g.,* ECF No. 273.)

Second, her counsel's decision to cite her views on the government as one factor supporting a downward departure from the Guidelines range was a strategic one, and thus "virtually unchallengeable."  *Strickland,* 466 U.S. at 690.  And given the Court ultimately did impose a downward variance, it certainly cannot say it was unsound one.

4.      Failure to File Motion to Suppress

In Ground 2(K), Washington alleges her "[c]ounsel failed to challenge admission of evidence seized in violation of [her] Forth Amendment right and violation of the Wire Fraud Act."  (ECF No. 265 at 8.)  In her reply, she clarifies she is referring to the "IP Address" purportedly obtained "by coercion" of Damus.  (ECF No. 273 at 8.)

As discussed above, the recording of law enforcement's interview with Damus refutes her contention that the Government obtained her IP address through coercive tactics.  Moreover, the Government points out that the evidence presented against Washington at trial "largely consisted of documents provided by the banks and government agencies."  (ECF No. 271 at 10.)  Washington has not alleged what evidence the Government was able to obtain via her IP address that was presented against her at trial and that—if suppressed—would have changed the outcome of her case.

5.    <u>Failure to Investigate</u>

In Grounds 2(L), 2(M), 2(N), and 2(O), Washington alleges various failures by her counsel to properly investigate her case.  (ECF No. 265 at 8–9.)  Specifically, she asserts that

- "There was no investigation conducted during the entirety of the case" and her "[c]ounsel failed to hire any type of investigator that would have been beneficial to building a viable defense for the movant;"

- Her "[t]rial counsel was ineffective in failing to conduct any pre-trial investigations or hire a investigator to conduct such investigations;"

- Her "[c]ounsel also failed to contact potential witnesses on behalf of movant," including her ex-husband, Damus; and

- Her "[t]rial counsel failed to investigate or argue whether the charged actions were taken by anyone other than the movant."

(*Id.*)

"To establish prejudice, [Washington] must demonstrate that any additional investigation would have uncovered exculpatory evidence, and she must show that this evidence would have impacted the outcome of her trial."  *Cox,* 782 F. App'x at 678. Washington avers, in conclusory fashion, that "[a] forensic investigation and an ERC would have had a significant difference on the outcome of the verdict in this case," and that "it would have provided a better defense" if her counsel had "seeked out any qualified, expert, or character witness."  (ECF No. 265 at 8–9.)  But she does not identify any specific exculpatory evidence any further investigation or witness interview would have uncovered, or how that specific evidence would have impacted the outcome

24

of her trial.  Accordingly, she has failed to demonstrate prejudice.  *Cf. Cox,* 782 F. App'x at 678 (defendant failed to demonstrate prejudice where she "fail[ed] to detail what evidence she believes any additional investigation would have  unearthed, or to explain how such evidence would have impacted her trial"); *United States v. Real-Ordones,* 43 F. App'x 229, 231–32 (10th Cir. 2002) (declining to issue certificate of appealability as to claim that counsel was deficient for failing to investigate where defendant did not "state how raising the issue of a warrantless search without consent would have changed the result of the proceeding").

      6.      <u>Failure to Object to Sentence Enhancements</u>

Finally, in Grounds 2(B), 2(D), 2(G), and 2(I), Washington alleges her counsel was ineffective in failing to object to certain sentence enhancements.

In Ground 2(B), Washington asserts that her counsel was ineffective for failing to "object[] at sentencing to district courts erroneous relevant conduct finding of co-defendant providing information that were factually inaccurate or false."  (ECF No. 265 at 5.)  Like the Government, the Court understands Washington to refer to the sentence enhancement under U.S.S.G. § 3B1.1(c), under which the defendant's offense level "increase[s] by 2 levels" if they were "an organizer, leader, manager, or supervisor in any criminal activity . . . ."  (ECF No. 271 at 9.)  In her reply, Washington clarifies that Ground 2(G) of the Motion—in which she alleges her counsel's "failing to object to error resulted [her] receiving a 90 month sentence when had she been sentenced properly her maximum sentence would have been 36 months or less"—relates to the same enhancement.  (ECF No. 265 at 6; ECF No. 273 at 7.)

Washington's claim fails because her counsel *did* object at sentencing to the application of that enhancement.  (ECF No. 234 at 7–15.)  In her reply brief, Washington concedes that "[c]ounsel may have objected," but she adds "it was blatantly clear that his objection was just to say that he in fact objected, but did not offer any viable argument to the enhancements under U.SS.C [*sic*] 3B1.1(c) for being an organizer, leader, or supervisor of Damus."  (ECF No. 273 at 6.)  Her assertion is belied by the record.  Defense counsel's argument that the enhancement "should not [be] trigger[ed] . . . because [of] Mr. Damus' involvement" spans several pages of the sentencing transcript.  (ECF No. 234 at 7–15.)  Thus, Washington has not demonstrated IAC on this basis.

In Ground 2(D), Washington alleges her "[c]ounsel failed to object to information in pre-sentence report that increased scope of relevant conduct beyond that in a plea agreement," thus increasing her sentencing guideline range by "40 or 50 months." (ECF No. 265 at 5–6.)  Washington does not specify to what information in the PSR her counsel allegedly failed to object in the Motion, but she seems to be arguing that her counsel was ineffective because her sentence after conviction at trial was ultimately more than what the Government offered her in a plea deal.  As discussed above, Washington has failed to allege the particulars of any plea offer made by the Government, so the Court cannot assess to what offenses Washington would have ultimately pleaded guilty under that plea offer, or what sentence the Government was prepared to recommend if she had accepted that plea offer.

Lastly, in Ground 2(I), Washington alleges that "[d]uring sentencing [her] prior criminal history had been mischaracterized without objection" and "that she actually was

26

innocent of being a career offender." (ECF No. 265 at 7.) But Washington did not receive any sentence enhancements for being a "career offender." And her counsel emphasized her lack of criminal history as support for a downward variance from the Guidelines range. (ECF No. 234 at 25–29, 71–72.) Thus, she cannot establish IAC on this basis either.

\*\*\*\*\*\*

For the reasons set forth above, the Court finds that Washington has not established any claim of IAC based on the allegations set forth in "Ground Two" of the Motion.

## C.    Washington's Request for Discovery and Evidentiary Hearing

In her reply, Washington "asks the Court to allow discovery and an evidentiary hearing," and "that an Expansion of the record be granted." (ECF No. 273 at 11.) "A petitioner for habeas relief is entitled to an evidentiary hearing on a § 2255 motion '[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief.'" *United States v. Gallegos,* 459 F. App'x 714, 716 (10th Cir. 2012) (quoting 28 U.S.C. § 2255(b)). But where, as here, "a § 2255 petition can be resolved on the record, . . . no evidentiary hearing is necessary." *United States v. Mendez-Zamora,* 230 F. App'x 792, 795 (10th Cir. 2007). Washington's requests for discovery and an evidentiary hearing are accordingly denied.

## IV.    CONCLUSION

For all the foregoing reasons, the Court ORDERS as follows:

1.    Defendant Shambrica Washington's Motion Under 28 U.S.C. § 2255 to Vacate Set Aside or Correct (ECF No. 265) is DENIED;

27

2.     The Court has *sua sponte* considered whether a certificate of appealability is appropriate, and hereby ORDERS that no certificate of appealability will issue because Washington has not made a substantial showing that jurists of reason would find it debatable whether the Motion states a valid claim of the denial of a constitutional right; and

3.     The Court will enter a separate judgment closing the civil habeas case.

Dated this 31st day of March, 2026.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge